**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GHAZALA SIDDIQUI and
MASOOD SIDDQUI,
Individually, and as Personal Representatives
of the Estate of RAHEEL SIDDIQUI, Deceased.

|  |  |  |
|---|---|---|
| | Plaintiffs, | Civil No. 17-13351 |
| vs. | | Honorable Arthur J. Tarnow |
| | | Mag. Judge David R. Grand |

UNITED STATES OF AMERICA,

                           Defendant.

_____/

### PLAINTIFFS' FIRST AMENDED COMPLAINT

COMES NOW the Plaintiffs, GHAZALA SIDDIQUI and MASOOD SIDDIQUI, Individually and as Personal Representatives of the Estate of RAHEEL SIDDIQUI, Deceased, by and through their undersigned attorneys, and hereby files this amended complaint against the DEFENDANT, THE UNITED STATES OF AMERICA, and allege in support of their claims as follows:

### NATURE OF THIS ACTION

This Honorable Court permitted the filing of an amended complaint on April 26, 2018; and this is a civil action brought against the UNITED STATES OF AMERICA pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 and 28 U.S.C. §§1346(B), seeking damages arising from DEFENDANT, UNITED STATES OF AMERICA, United States Marine Corps, United States Marine Corps Parris Island Depot, Department of the Navy, United States of America Recruiting Station Detroit 4th District Recruiting Command, and John and Jane Does 1-

20, all whose true names are unknown, (hereinafter collectively referred to as "DEFENDANT"
or "UNITED STATES OF AMERICA") for negligence, negligence on multiple levels of
command, and other wrongful acts, that resulted in RAHEEL SIDDIQUI'S wrongful death.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §
   1346(b)(1) against the DEFENDANT UNITED STATES OF AMERICA, for money
   damages, accruing on or after January 1, 1945, for a death caused by the negligent and
   wrongful acts and omissions of employees of the United States Government while acting
   within the course and scope of their office or employment, under the circumstances
   where the DEFENDANT, if a private person, would be liable to the Plaintiff.

2. Venue is proper in this jurisdictional district pursuant to 28 U.S.C. § 1402(b).

3. This Court has Subject Matter Jurisdiction over THE UNITED STATES OF AMERICA
   pursuant to the Federal Tort Claims Act, because the United States is the proper
   DEFENDANT in this action and, at all times relevant to this action, employees of the
   DEFENDANT, THE UNITED STATES OF AMERICA, were acting in their official
   capacity, in their performance of non-discretionary duties and under the authority of THE
   UNITED STATES OF AMERICA.

4. That the Plaintiffs have complied with all conditions precedent to bringing this action
   pursuant to Title 28, Section 2675 and attaches hereto as Exhibits "A"-FTCA Denial
   Letter, "B"-Standard Form 95 with attached documents, and "C"-Department of the Navy
   Request for claimant authority, the copies of the notices required hereunder. The

UNITED STATES denied said claims in a letter dated, April 14, 2017 and mailed April 17, 2017.

## PARTIES

5.  That at all times material hereto, the Plaintiffs, GHAZALA SIDDIQUI and MASOOD SIDDIQUI, were residents of Wayne County in the State of Michigan.

6.  That GHAZALA SIDDIQUI and MASOOD SIDDIQUI have been appointed as Personal Representatives of the Estate of Raheel Siddiqui, Deceased, pursuant to an Order of the Circuit Court, Third Judicial Circuit, in and for Wayne County, a copy of which is attached hereto and made part hereof as Exhibit "D".

7.  At the time of his death, RAHEEL SIDDIQUI was a resident of Taylor, Michigan.

8.  THE UNITED STATES OF AMERICA is a sovereign nation and exists under the Constitution and the laws enacted by the United States Congress. The United States Marine Corps, United States Marine Corps Parris Island Depot, United States of America Recruiting Station Detroit 4th District Recruiting Command, and John and Jane Does 1-20 are, and at all times relevant to this lawsuit were, an agency, agents, employees, directors, officers, operators, administrators, and staff employed by the United States Military, namely the Department of the Navy, organized and existing under the laws of the United States and are collectively referred to as " DEFENDANT" OR THE "UNITED STATES OF AMERICA.")

9.  That "employees" includes officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and

persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

10. That "acting within the scope of his office or employment", in the case of a member of the military or naval forces of the United States or a member of the National Guard as defined in section 101(3) of title 32, means acting in line of duty.

## FREEDOM OF INFORMATION ACT (FOIA)

11. That the Department of the Navy received PLAINTIFFS Freedom of Information Act (FOIA) request on July 28, 2016 and denied it on July 29, 2016. Exhibit "E".

12. That said letter states, "Although your request is being denied at this time, please understand that upon closure of our investigation, it will be processed and all releasable information will be provided to you. You will not be required to resubmit another written request."

13. That, upon information and belief, the investigation has been completed.

14. That since completion of said investigation, PLAINTIFFS FOIA request for all relevant information and records is still outstanding.

## FACTUAL ALLEGATIONS

15. That RAHEEL SIDDIQUI attended Truman High School in Taylor, Michigan.

16. That RAHEEL SIDDIQUI then attended the University of Michigan Dearborn in Dearborn, Michigan.

17. That on or about the time RAHEEL SIDDIQUI was a student at University of Michigan Dearborn and worked for a national department store chain, he was recruited by the DEFENDANT.

18. That the DEFENDANT made certain representations about joining the Marine Corps and RAHEEL SIDDIQUI relied on those representations.

19. That RAHEEL SIDDIQUI spent approximately eight months in the Delayed Entry Program (DEP) under the guidance of his recruiter.

20. That RAHEEL SIDDIQUI was excited about serving the UNITED STATES OF AMERICA and its promises of honor, integrity and a commitment to core values.

21. That RAHEEL SIDDIQUI told friends and family he will "come back as a Marine and will not quit no matter how hard it is" because he can't let his family and friends down.

22. That RAHEEL SIDDIQUI had planned to become a Marine and continue his life while serving THE UNITED STATES OF AMERICA.

23. That Plaintiff, GHAZALA SIDDIQUI, met with DEFENDANT during one of his initial meetings with RAHEEL SIDDIQUI at DEFENDANT'S Recruiting location.

24. That PLAINTIFFS relied upon the representations made by DEFENDANT.

25. That, upon information and belief, approximately fewer than one-fifth of 1 percent of the Marine Corps is Muslim.

26. That Plaintiff GHAZALA SIDDIQUI wears the Muslim Hijab in public at all times.

27. That the DEFENDANT was well aware of RAHEEL SIDDIQUI'S AND Plaintiff, GHAZALA SIDDIQUI'S Muslim faith.

28. That RAHEEL SIDDIQUI informed DEFENDANT that his religious preference was Muslim.

29. That RAHEEL SIDDIQUI indicated in his record of military processing that he was of the Muslim faith.

30. That during his recruitment, RAHEEL SIDDIQUI never indicated any history of suicidal ideations, suicide attempts or any other mental health concerns.

31. That RAHEEL SIDDIQUI then began part time training sessions with the DEFENDANT in Michigan.

32. That RAHEEL SIDDIQUI maintained a regular civilian job during the time he was training with DEFENDANT in Michigan.

33. That RAHEEL SIDDIQUI was not on full time active duty during his training with the DEFENDANT in Michigan.

34. That the DEFENDANT deliberately withheld material information from RAHEEL SIDDIQUI and Plaintiffs regarding the conditions at Parris Island preventing RAHEEL SIDDIQUI from making an informed decision to enlist.

35. That RAHEEL SIDDIQUI was misled by the DEFENDANT into believing he was being given a "golden opportunity" by enlisting.

36. That on or about July 8th, 2015, RAHEEL SIDDIQUI signed his enlistment papers after he was medically screened and found to be in good health and qualified for service.

37. That on or about July 14th, 2015 upon information and belief, a Drill Instructor directly employed by the DEFENDANT abused a Muslim recruit at Parris Island, South Carolina while intoxicated.

38. That the DEFENDANT was aware that RAHEEL SIDDIQUI would also be going to Parris Island, South Carolina.

39. That there was no effort by the DEFENDANT to warn Plaintiffs and/or RAHEEL SIDDIQUI that other Muslim recruits were discriminated against and abused due to his Muslim faith.

40. That, upon information and belief, RAHEEL SIDDIQUI was discriminated against due to his Muslim faith.

41. That on or about March 6, 2016, RAHEEL SIDDIQUI, and other recruits scheduled to depart the next morning to Parris Island, SC., met with their families at a hotel in Sterling Heights, MI.

42. That Plaintiffs GHAZALA SIDDIQUI and MASOOD SIDDIQUI were concerned since RAHEEL SIDDIQUI was repeatedly being called away by the DEFENDANT personnel present at the hotel to attend phone call(s).

43. That on or about March 7, 2016, RAHEEL SIDDIQUI arrived at the Recruit Depot Parris Island, South Carolina.

44. That at some point between March 7, 2016 and March 12, 2016, a decision by the UNITED STATES OF AMERICA to assign and direct RAHEEL SIDDIQUI to Platoon 3042 (Company K, Third Recruit Training Battalion) was commenced.

45. That at the time RAHEEL SIDDIQUI was assigned and directed to Platoon 3042, the UNITED STATES OF AMERICA was well aware of and should have known who would supervise Platoon 3042 and/or act as the lead drill instructor of Platoon 3042.

46. That at the time RAHEEL SIDDIQUI was assigned and directed to Platoon 3042, the UNITED STATES OF AMERICA was well aware of RAHEEL SIDDIQUI'S Muslim faith.

47. That at the time RAHEEL SIDDIQUI was assigned and directed to Platoon 3042, the UNITED STATES OF AMERICA was well aware that there was an investigation for the acts committed against other Muslim recruits under the same command in the same Recruit Depot Parris Island, South Carolina.

48. That, upon information and belief, there were 59 Recruits "picked up" in Platoon 3042.

49. That despite the above knowledge, the UNITED STATES OF AMERICA negligently failed to adequately oversee and protect RAHEEL SIDDIQUI and/or reassign and/or redirect him to another battalion.

50. That upon information and belief on or about March 13, 2016, less than one full day after being picked up by Platoon 3042, and 0 days of completed training, RAHEEL SIDDIQUI allegedly made a verbal threat of suicide.

51. That upon information and belief at 0720 on March 13, 2016, the DEFENDANT called emergency medical services, and military police were dispatched to the Third Recruit Training Battalion barracks.

52. That upon information and belief at 0724 on March 13, 2016, military police arrived and spoke with RAHEEL SIDDIQUI, who told them about the DEFENDANT physically hitting him.

53. That the DEFENDANT decided that RAHEEL SIDDIQUI did not qualify for emergency transport to the hospital.

54. That a report made via email was sent to the DEFENDANT stating that RAHEEL SIDDIQUI had made a suicidal ideation and that emergency medical services had declined to take him to Beaufort Memorial Hospital.

55. That on or about the next day RAHEEL SIDDIQUI recanted that verbal threat.

56. That the next morning, the DEFENDANT, upon information and belief, escorted RAHEEL SIDDIQUI to recruit liaison services.

57. That the DEFENDANT, upon information and belief, stood approximately 10 feet away while RAHEEL SIDDIQUI provided a ''voluntary statement'' retracting his threat.

58. That the DEFENDANT deemed him to be at a ''low risk for harm,'' and RAHEEL
    SIDDIQUI went back to training.

59. That RAHEEL SIDDIQUI was returned to his training platoon without the benefit of the
    DEFENDANT mental health trial training program and/or the scheduling of a follow-up
    appointment.

60. That upon information and belief the DEFENDANT mental health provider was not a
    licensed practitioner.

61. That DEFENDANT failed to follow standard operating procedures and there is a
    reasonable issue in adequacy of care provided by the DEFENDANT.

62. That the DEFENDANT dismissed RAHEEL SIDDIQUI'S complaint of being hit as mere
    "drill corrections."

63. That on March 17, 2016, Platoon 3042 received instruction on the DEFENDANT'S
    mixed-martial-arts punching techniques.

64. That, upon information and belief, it was routine for the DEFENDANT to pair bigger or
    stronger recruits against the weaker or poorly performing recruits.

65. That RAHEEL SIDDIQUI was paired to fight with a bigger, stronger recruit.

66. That the pairing of RAHEEL SIDDIQUI in the Martial Arts Program training was done
    by the DEFENDANT for the purpose of subjecting RAHEEL SIDDIQUI to physical
    abuse by a significantly larger recruit.

67. That RAHEEL SIDDIQUI sustained serious injuries from that physical exchange.

68. That on March 18, 2016, RAHEEL SIDDIQUI handed DEFENDANT a note. ''This
    recruit has to go to medical. This recruit's throat has been swollen for three days and is
    getting worse,'' it said. ''This recruit also coughed blood a few times last night. And this

recruit completely lost his voice and can barely whisper. This recruit's whole neck is in a lot of pain.''

69.   That RAHEEL SIDDIQUI was not sent to the medical department and was not given medical attention.

70.   That, upon information and belief, RAHEEL SIDDIQUI fell unconscious and the DEFENDANT employee rubbed his knuckles across RAHEEL SIDDIQUI'S sternum to revive him.

71.   That the DEFENDANT employee made physical contact by intentionally slapping RAHEEL SIDDIQUI.

72.   That RAHEEL SIDDIQUI died in South Carolina.

73.   That in a letter dated, April 26, 2017 the Beaufort County Coroner stated that he responded to the scene on the date of the incident.

74.   That, upon information and belief, DEFENDANT provided a history of the incident to the Beaufort County Coroner.

75.   That, upon information and belief, the Medical Examiner used said "history" in part to make her determination.

76.   That, upon information and belief, no authenticated witness statement(s) related to the fall, or any authenticated records related to Defendant's transport of RAHEEL SIDDIQUI to any medical institution in South Carolina have been released.

77.   That, upon information and belief, no witness has come forward with any credible and/or verifiable information corroborating the allegation of suicide.

78.   That there are material inconsistencies in RAHEEL SIDDIQUI's time of death.

79. That RAHEEL SIDDIQUI's Certificate of Death certifies death on March 18, 2016, at 5:45am.

80. That RAHEEL SIDDIQUI's Autopsy Report states he was pronounced in the operating room on March 18, 2016, at 10:06am.

81. That RAHEEL SIDDIQUI's same Autopsy Report lists the date of death as March 18, 2016, at 10:45am.

82. That the DEFENDANT almost immediately alleged that RAHEEL SIDDIQUI had committed suicide.

83. That the institution responsible for allegedly treating RAHEEL SIDDIQUI immediately before his death provided a document confirming "no record" of him in their master patient index.

84. That the medical evidence of the injuries sustained by RAHEEL SIDDIQUI are inconsistent with death resulting solely from a fall.

85. That the autopsy failed to report or thoroughly investigate significant findings, and/or visible marks which appear to be ligature marks on RAHEEL SIDDIQUI's body in order to conclusively form an accurate opinion related to the manner of death.

86. That the 911 call alleged to have been made after RAHEEL SIDDIQUI'S fall is void of most common inquiries that are made in the usual course of emergency calls.

87. That, upon information and belief, suicide is not the most conclusive manner of death in this case.

88. That a Command Investigation into the death of RAHEEL SIDDIQUI was initiated.

89. That, upon information and belief, RAHEEL SIDDIQUI's death was not due to his own misconduct.

90. That the said Command Investigation was heavily redacted and was originally posted to the DEFENDANT's website.

91. That, upon information and belief, approximately 40 of the last pages of the Command Investigation are now completely redacted.

92. That the DEFENDANT'S own Command Investigation dated 10 Aug 16, recommended punitive and administrative action against several Marines, and a separate inquiry into the adequacy of care provided to RAHEEL SIDDIQUI.

93. That, upon information and belief, the DEFENDANT violated multiple sections of the Uniform Code of Military Justice.

94. That, upon information and belief, during interviews with other recruits from Platoon 3042, allegations of ongoing physical abuse arose, necessitating the notification of the command and suspension of many drill instructors from their duties.

95. That upon information and belief, several witnesses to the abuse, medical personnel and other recruits were unwilling to provide information and many requested legal counsel.

96. That as a result of conflicts and missing information, a recommendation was made for a separate inquiry by officials from Navy Medicine to be conducted into the adequacy of care provided to RAHEEL SIDDIQUI.

97. That despite documented evidence of assault, the UNITED STATES OF AMERICA has failed to bring an assault charge in the death of RAHEEL SIDDIQUI.

98. That the identities and ranks of all those involved and/or administratively sentenced in the abuse and ultimate death of RAHEEL SIDDIQUI have been withheld by the UNITED STATES OF AMERICA.

99. Upon information and belief, two senior drill instructors/officers have been convicted in military court for charges relating to the case involving the death of RAHEEL SIDDIQUI.

<u>**COUNT 1**</u>
<u>**NEGLIGENCE**</u>

100. The allegations of Paragraphs 1 through 99 are restated herein.

101. That the torts that gave rise to this action began when RAHEEL SIDDIQUI was a civilian.

102. Plaintiffs, GHAZALA SIDDIQUI and MASOOD SIDDIQUI are civilians, and their claims are actionable under the law.

103. That the UNITED STATES OF AMERICA owed a duty of care to RAHEEL SIDDIQUI since the beginning of the recruitment process.

104. That the UNITED STATES OF AMERICA was acting within the course and scope of its federal employment.  28 U.S.C. §§ 1346(b)(1), 2675, 2672 and 2679.

105. The UNITED STATES OF AMERICA breached its duties of care to RAHEEL SIDDIQUI.

106. That the DEFENDANT was wanton, reckless, willful and/or grossly negligent on a completely systemic level.

107. That the acts and events set forth above constitute negligent and wrongful acts and omissions of the UNITED STATES OF AMERICA, inter alia, maltreatment, hazing, assault, abuse, abuse of process, infliction of emotional distress, misrepresentation of facts and while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the law.

108. That the recruitment process led RAHEEL SIDDIQUI to be negligently placed in the same or similar environment under the same command that negligently caused harm to other recruits of the Muslim faith.

109. That, upon information and belief, several factors contributed to RAHEEL SIDDIQUI'S death including maltreatment by his drill instructor team, leadership failures at multiple levels of command, and complete administrative and process failures.

110. That the DEFENDANT failed to provide information pursuant to the PLAINTIFF'S FOIA request.

111. That the UNITED STATES OF AMERICA breached its aforementioned non-delegable and non-discretionary duties when it negligently failed to use the reasonable care and diligence exercised by other military divisions and employees under the same or similar circumstances, committing acts and/or omissions constituting negligence, as the term is defined by law, in the following respect or manner:

   a. That the DEFENDANT intentionally misrepresented material facts about the recruitment process thereby misleading RAHEEL SIDDIQUI and PLAINTIFFS;

   b. That the DEFENDANT had a pecuniary interest in making these false, misleading and deceptive representations in order to entice and recruit RAHEEL SIDDIQUI to join the Marine Corps;

   c. That the DEFENDANT failed to properly monitor employees who were responsible to teach and train RAHEEL SIDDIQUI;

   d. That, upon information and belief, The DEFENDANT fostered a culture of abuse and hazing in Platoon 3042 by teaching the drill instructors that they needed to hate recruits causing harm to RAHEEL SIDDIQUI;

e.  That RAHEEL SIDDIQUI'S written note passed to the DEFENDANT constituted a request for medical attention that was denied;

f.  That the DEFENDANT negligently failed to employ proper safety and security measures needed to prevent harm to RAHEEL SIDDIQUI;

g.  That the DEFENDANT failed to establish appropriate procedures or protocols concerning the training, care and medical care of RAHEEL SIDDIQUI;

h.  That the failure of the Recruit Training Regiment to adequately investigate alleged recruit abuse contributed to the death of RAHEEL SIDDIQUI;

i.  That, upon information and belief, the DEFENDANT's false official statement was in violation of the Uniform Code of Military Justice when he annotated on RAHEEL SIDDIQUI'S evaluation card that RAHEEL SIDDIQUI did not make any allegations of abuse;

j.  That the commands by the DEFENDANT causing RAHEEL SIDDIQUI to repeatedly run most of the length of the squadbay from the quarterdeck to the recruit head were not permitted, and constituted unauthorized incentive training;

k.  That, upon information and belief, the DEFENDANT violated Articles 92 and 128 of the Uniform Code of Military Justice when RAHEEL SIDDIQUI was assaulted and struck in the face between one and three times;

l.  That the inadequate supervision by the UNITED STATES OF AMERICA created a permissive environment that allowed drill instructor misconduct to escalate in severity as employees and drill instructors grew accustomed to the absence of officer leadership;

m.  That the DEFENDANT almost immediately alleged that RAHEEL SIDDIQUI's death was a suicide without a full investigation of the facts causing irreparable damage to PLAINTIFFS.

n.  That the DEFENDANT, upon information and belief, intentionally failed to consider the possibility that RAHEEL SIDDIQUI was fatally injured by its own employees, despite investigatory evidence of maltreatment, abuse and hazing leading up to RAHEEL SIDDIQUI's death.

o.  That the failures in the investigative process included unnecessary delays, poor investigative techniques, lengthy review and processing periods, failure to take timely routing of investigations, and a failure to supervise the investigative process;

p.  That, upon information and belief, the DEFENDANT's failed to take appropriate actions for referring to RAHEEL SIDDIQUI as a "terrorist".

q.  That the DEFENDANT failed to take appropriate actions for failing to report RAHEEL SIDDIQUI allegation of physical abuse;

r.  That THE UNITED STATES OF AMERICA failed to take appropriate actions for stating that they were unaware of RAHEEL SIDDIQUI's religion and ethnicity.

s.  That the DEFENDANT failed to take appropriate actions for failing to file the recruit incident report.

t.  That the DEFENDANT negligently and intentionally failed to bring an assault charge against its employees despite documented evidence of assault.

u.  That the DEFENDANT negligently delayed transportation and the subsequent treatment of RAHEEL SIDDIQUI.

   v.   That DEFENDANT'S have failed to provide verifiable evidence of Parris Island Fire Rescue's report.

112. That at the battalion and regimental level, there were leadership, administrative, and process failures which led to the assignment of the DEFENDANT to RAHEEL SIDDIQUI's platoon, while under investigation for abusing other Muslim recruits.

113. That at the battalion and regimental level, there were leadership, administrative, and process failures which led to the assignment of other employees of the DEFENDANT to RAHEEL SIDDIQUI'S platoon which were contributing factors to the abuse suffered by RAHEEL SIDDIQUI.

114. That the leadership and administrative failures by the UNITED STATES OF AMERICA set the conditions permitting this tragic event to unfold.

115. That recurrent physical and verbal abuse of recruits by drill instructors, with a noted insufficiency of oversight and supervision was present at various levels of command ultimately causing fatal injury to RAHEEL SIDDIQUI.

116. That the command investigation revealed process flaws and deficiencies in mental health care policies and procedures, both in the Mental Health Unit at the Naval Hospital and in the Recruit Training Regiment ultimately causing fatal injury to RAHEEL SIDDIQUI.

117. That the drill instructor team fostered an environment that led to a culture of unauthorized incentive training ultimately causing fatal injury to RAHEEL SIDDIQUI.

118. That there were lapses in coordination and communication between the Recruit Training Regiment and the Mental Health Unit causing RAHEEL SIDDIQUI to be returned to the same training platoon without the benefit of the mental health trial training program, under the command of same drill instructor.

119. That the UNITED STATES OF AMERICA was wanton, reckless, willful and/or grossly negligent in failing to supervise the conduct of individuals who had direct authority over RAHEEL SIDDIQUI.

120. That the UNITED STATES OF AMERICA knew or should have known of problems with hazing, maltreatment, and abuse at Parris Island, and primarily involving the third recruit training battalion, aka (the thumping third), a significant time period prior to RAHEEL SIDDIQUI'S death.

121. That the UNITED STATES OF AMERICA failed to act in a reasonable, prudent, and careful manner in conducting background investigations, failed to correctly implement and monitor the Mental Health Unit at Parris Island, South Carolina, and displayed a lack of entries/documentation consciously dismissing the severity of the complaints made against drill instructors.

122. That as a direct and proximate and foreseeable result of the negligence of the DEFENDANT, RAHEEL SIDDIQUI was forced to endure torture, maltreatment and abuse that resulted in his death.

123. That as a result of his death, the family of RAHEEL SIDDIQUI has been injured and have suffered damages, to wit: That the Plaintiffs, his parents, have lost their son's companionship, support, services, care, comfort, society, affection, loss of fulfillment of religious and cultural obligations, loss of respect and standing in the community and extended family, and have experienced and will continue to experience mental pain and suffering, both in the past from the date of RAHEEL SIDDIQUI'S death, and will experience said mental pain and suffering in the future, to wit: permanently;

## COUNT 2
## VICARIOUS LIABILITY, RESPONDEAT SUPERIOR,
## OSTENSIBLE AGENCY AND/OR AGENCY

124. The allegations of Paragraphs 1 through 123 are restated herein.

125. That at all times relevant to this complaint the DEFENDANT were agents, agencies, employees, directors, officers, operators, administrators, and staff employed by and/or acting on behalf of The United States who is vicariously responsible for the negligent acts and omissions of its employees, agents, agencies, officers and staff.

126. That the agents, agencies, employees, directors, officers, operators, administrators, and staff acting on behalf of the United States negligently and/or recklessly, directly and proximately caused personal injury to RAHEEL SIDDIQUI, contributing and leading to his death, including both acts of omission and acts of commission.

127. That the acts/omissions set forth herein would constitute a claim under the law.

128. That considering the dangerous and serious nature of the misconduct on multiple levels of command, the DEFENDANT failed to promptly take legal and/or administrative actions which would have subsequently protected RAHEEL SIDDIQUI.

129. That, to date, and despite multiple requests, PLAINTIFFS do not have access to all of the enclosures of DEFENDANT'S Command Investigation into the death of RAHEEL SIDDIQUI.

130. That the UNITED STATES OF AMERICA is liable pursuant to 28 U.S.C. 1346(b)(1).

## COUNT 3
## HAZING

131. The allegations of Paragraphs 1 through 130 are restated herein.

132. That The United States Order 1510.32F (RECRUIT TRAINING) requires that recruit training be conducted in a professional manner and prohibits hazing, maltreatment, and abuse of authority.

133. That the DEFENDANT has a duty to protect the vulnerable population of recruits.

134. That, upon information and belief, from 2013-2015, approximately 221 preliminary hazing investigations were conducted across Parris Island Depot's four battalions.

135. That RAHEEL SIDDIQUI was a target because of his Muslim faith.

136. That the DEFENDANT failed to properly investigate, evaluate and/or refused to take adequate action within a sufficient amount of time to institute sufficient safeguards, evaluation methods or training programs, and/or develop sufficient safeguards, evaluation methods or training programs and procedures despite a history of hazing at Parris Island.

137. That the Regimental Commanding Officer's Hazing Policy and New Drill Instructor Integration Plan, without additional supervisory, educational, and disciplinary measures, does not adequately and affirmatively address the problem of 'hat hazing' within the Recruit Training Regiment.

138. That the purpose of the unauthorized incentive training was to create physical pain and exhaustion in recruits, beyond what is lawfully permitted through the use of authorized incentive training, ultimately causing fatal injury to RAHEEL SIDDIQUI.

139. That, upon information and belief, the UNITED STATES OF AMERICA had knowledge of another Muslim recruit, in the third recruit training battalion, who was put into an

industrial clothes dryer by THE UNITED STATES OF AMERICA and referred to as a "terrorist".

140. That since the beginning of the recruitment process, the UNITED STATES OF AMERICA failed to take appropriate action upon actual or constructive notice of a potential problem or problems with individuals involving hazing, maltreatment and abuse at its Parris Island facility ultimately causing fatal injury to RAHEEL SIDDIQUI.

141. That as a direct and proximate result of hazing, RAHEEL SIDDIQUI suffered fatal injuries.

**COUNT 4**
**TORTURE/CRIMINAL ACTS**

142. The allegations of Paragraphs 1 through 141 are restated herein.

143. Upon information and belief, torture, and punishments involving torture are illegal and punishable within the United States, its territorial bounds and internationally. *See generally*, Eighth Amendment to the United States Constitution, the Universal Declaration of Human Rights (UDHR) 1948, the 1949 Geneva Conventions (signed 1949; ratified 1955), the American Convention on Human Rights (signed 1977), the International Covenant on Civil and Political Rights (signed 1977; ratified 1992), and the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (signed 1988; ratified 1994); U.S. Military Field Manuals and other Acts of Congress.

144. That the torts that gave rise to the eventual torture, hazing, abuse and forced inhumane treatment suffered by RAHEEL SIDDIQUI, as documented in DEFENDANT's own Command Investigation, are fundamental to the basis of this claim.

145. That the torture and related abuse and/or criminal acts suffered by RAHEEL SIDDIQUI are not protected by the Feres Doctrine.

146. That due to the specific facts and circumstances of this case, along with the absence of clarity and truth throughout the investigation of the death of RAHEEL SIDDIQUI, the PLAINTIFFS have suffered life altering damages and irreparable harm.

147. Upon information and belief, DEFENDANT'S payment of a set number of benefits under the military structure immediately upon RAHEEL SIDDIQUI'S death, and without the presence of counsel or a certified translator, was an intentional and strategic attempt at damage control, and is wholly insufficient in comparison to the multiple violent cruelties suffered by RAHEEL SIDDIQUI; specifics of which were revealed several months after his death.

148. That the magnitude of the loss suffered by the PLAINTIFFS since the death of RAHEEL SIDDIQUI, together with the failure of command at a systemic level and the ruthless manner in which RAHEEL SIDDIQUI was mercilessly abused by DEFENDANT, cannot fairly be resolved by an apology and a copy of a redacted case file.

## COUNT 5
## DELAYED ENTRY PROGRAM (DEP)

149. That the allegations of Paragraphs 1 through 148 are restated herein.

150. That the DEFENDENT allows individuals, known as "poolees", to participate in their Delayed Entry Program before they are sent to "recruit training". Hajdusek v. USA 16-cv-340-SM at 3.

151. That poolees meet with their recruiters, at least weekly, to ensure they are continuously making strides to "prepare" for recruit training. See http://www.mcrc.marines.mil

(Article: "Marine Corps Delayed Entry Program Proves Beneficial For Poolees") Sgt. Timothy Stewman May 2, 2014.

152. That RAHEEL SIDDIQUI was accepted for the Delayed Entry Program. Exhibit "F".

153. That although the torts that gave rise to this action began during the recruitment process, while RAHEEL SIDDIQUI was a civilian, RAHEEL SIDDIQUI was also still just a "poolee" and was not a "recruit" on active duty in the Marine Corps while he was "participating" in the Delayed Entry Program.

154. That upon information and belief, during the eight months that RAHEEL SIDDIQUI was in DEP, there were incidents of abuse suffered by other Muslim recruit(s) at Parris Island.

155. DEFENDANT had sufficient time to act and mandate safeguards to ensure that RAHEEL SIDDIQUI, a Muslim, was not assigned to the same drill instructors against whom the complaints of abuse were made. As a result of DEFENDANT'S failure, RAHEEL SIDDIQUI and PLAINTIFFS were deprived of the opportunity to make an informed decision.

156. That the Delayed Entry Program is different from full military distinction, and "poolees are not eligible for DoD type benefits and they do not fall under the Feres Doctrine, they may file claims or suits against a Marine, the Recruiting Command or the Marine Corps for negligence." Command Order 7000.3 (document no. 15-1) at para.4 (b) (8). See also Hajdusek v. USA 16-cv-340-SM

157. That intentional misrepresentations, and even disingenuous promises, by DEFENDANT'S Recruitment Team do not involve the kind of judgment that the discretionary function exception of the FTCA is designed to shield.

158. That the Feres Doctrine is inapplicable to "civilians", "poolees" and non-members of the military and thus, this Honorable Court has authoritative subject matter jurisdiction in this specific case.

## **RELIEF REQUESTED**

WHEREFORE, the PLAINTIFFS, GHAZALA SIDDIQUI and MASOOD SIDDIQUI, Individually, and as Personal Representatives of the Estate of RAHEEL SIDDIQUI, Deceased, hereby demand judgment for compensatory damages in the sum of Sixty Million and 00/100 Dollars ($60,000,000.00), and Forty Million and 00/100 Dollars ($40,000,000.00), respectively, totaling One Hundred Million Dollars ($100,000,000.00) against the DEFENDANT, THE UNITED STATES OF AMERICA, plus costs and interest.

THE SHIRAZ LAW FIRM, PLLC.
20245 W. 12 Mile Rd., Suite 215
Southfield, MI. 48076
Telephone: (248) 419-0678
Fax: (248) 817-4833
Email: info@shirazlawfirm.com
Attorney for Plaintiff(s)

By: _____
      SHIRAZ K. KHAN
      MI BAR NO. P78359

### CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2018, I electronically filed the foregoing instrument with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Zak Toomey
Assistant United States Attorney
c/o United States Attorney
211 W. Fort Street Suite 2001
Detroit, MI 48226
zak.toomey@usdoj.gov


      /s/ Shiraz K. Khan
**Shiraz K. Khan** (P78359)
**Attorney for Plaintiff(s)**