UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GHAZALA SIDDIQUI, ET AL.,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 17-13351

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [14]**

Private Raheel Siddiqui fell to his death from his barracks on Parris Island on April 18, 2016 while training to become a United States Marine. His parents, both individually and as personal representatives of their son, brought this suit under the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), alleging that Pvt. Siddiqui was brutalized by a sadistic drill instructor, who was already under investigation by the Marines for abusing Muslim recruits. Despite the serious questions that remain regarding the circumstances of Pvt. Siddiqui's death, the Court will dismiss this case. Because of the *Feres* Doctrine, tort claims arising from injuries incident to military service are not actionable under the FTCA.

**FACTUAL BACKGROUND**

Raheel Siddiqui, a native of Taylor, Michigan, was a student at the University of Michigan in Dearborn when he was recruited to join the U.S. Marine Corps. (Am. Compl. ¶ 17). He signed his enlistment papers on July 8, 2015 and began training part-

time with the Marine Corps Delayed Entry Program ("DEP") on August 20, 2015. (Id. at ¶ 36; Pl. Ex. F).

Raheel arrived at the Recruit Depot in Parris Island, South Carolina, on March 7, 2016. At 9:31 A.M. he signed, with a biometric signature, a form granting his discharge from the DEP Program. (Def. Ex. 3). At that point he was "accepted for enlistment in the Regular Component of the United States Marine Corps in pay grade E1." (Id.). On March 13, the Marine Corps assigned him to Platoon 3042, Company K, Third Recruit Training Battalion. (Am. Compl. ¶ 44). Gunnery Sergeant Joseph A. Felix, Jr. was the senior drill instructor assigned to Platoon 3042. (Id.).

That same day, Pvt. Siddiqui allegedly threatened to commit suicide. (Am. Compl. ¶ 50-57). The Marine Corps contacted emergency medical services, who dispatched military police to the Third Recruit Training Battalion barracks. (Id.). They declined to bring Pvt. Siddiqui to the hospital, and the next day he went to recruit liaison services and retracted his threat of suicide. (Id. at ¶ 57). He was thereafter deemed a "low risk of harm" and sent back to training. (Id. at ¶ 58).

Several days later, on March 17, 2016, Pvt. Siddiqui participated in a mixed-martial arts exercise, during which he was paired with a bigger, stronger recruit. (Am. Compl. at ¶ 65). He sustained serious injuries from these drills. (Id. at ¶ 67).

On March 18, 2016, Pvt. Siddiqui gave this note to his superiors:

> "This recruit has to go to medical. This recruit's throat has been swollen for three days and is getting worse. This recruit also coughed blood a few times

last night. And this recruit completely lost his voice and can barely whisper. This recruit's whole neck is in a lot of pain."

(Id. at ¶ 68).

He was not allowed to go to the medical center, and, later that day, Sgt. Felix found Pvt. Siddiqui unconscious in the barracks. In an attempt to revive him, Sgt. Felix rubbed his knuckles on Pvt. Siddiqui's sternum and slapped him. (Id. at ¶ 70). Shortly thereafter, Private Raheel Siddiqui fell to his death from a stairwell in the barracks. He had been at boot camp for 11 days.

The Marine Corps initiated a Command Investigation into Pvt. Siddiqui's death. On August 10, 2016, the Command Investigation recommended punitive and administrative action against several Marines, including Sgt. Felix, who was charged and convicted by a U.S. Marines Court Martial for violating orders, maltreatment, false official statements, and drunk and disorderly conduct. (Def. Ex. 3). He was dishonorably discharged and sentenced to ten years confinement. (Id.). His former supervisor, Lt. Col. Joshua Kissoon, pled guilty to dereliction of duty, making false official statements, and conduct unbecoming of an officer.

The Siddiqui family has received $100,000 from the Marine Corps death benefits program, as well as $400,000 from the Servicemen's Group Life Insurance ("SGLI") program. (Def. Ex. 2).

**PROCEDURAL BACKGROUND**

On October 13, 2017, Plaintiffs (Pvt. Siddiqui's parents and his estate) filed their complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, alleging negligence, vicarious liability, and hazing [Dkt. #1]. Defendant filed its Motion to Dismiss on December 15, 2017 [8], and a hearing was held on April 26, 2018. The Court gave Plaintiffs leave to amend their complaint to account for the unique legal position of DEP recruits, specifically as it is discussed in *Hajdusek v. United States*, 2017 WL 4250510 (D.N.H. Sept. 21, 2017). Plaintiffs then filed an amended complaint on May 29, 2018 [13], mooting the previous motion to dismiss. Defendant filed a new motion to dismiss on June 19, 2018 [14]. That motion is now fully briefed, and a hearing was held October 29, 2018.

## LEGAL STANDARD

The United States moves to dismiss Plaintiffs' claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). A challenge to subject matter jurisdiction takes the form of a facial attack or a factual attack. The United States makes a factual attack, which means that it challenges "the factual existence of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). Accordingly, Plaintiffs' factual allegations do not get the benefit of the presumption of truthfulness, and the Court may "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

## ANALYSIS

The United States argues that Plaintiffs' claims are barred by sovereign immunity. Specifically, it asserts that the Siddiqui family's claims are not actionable under the FTCA because 1) they are barred by the *Feres* Doctrine, [1] 2) they are barred by the intentional tort exception of the Federal Torts Claims Act, found in 28 U.S.C. § 2680(h), and 3) they are barred by the discretionary function exception to the FTCA, § 2680(a). Since the Court lacks jurisdiction under the *Feres* Doctrine, it will not reach the intentional tort or discretionary function exceptions.

*Feres v. United States*, 340 U.S. 135 (1950) was comprised of three consolidated cases, two of which alleged negligent treatment by military surgeons and a third of which involved a serviceman killed in a barracks fire. In each case, the plaintiffs, "while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces." *Feres*, 340 U.S. at 138. The Supreme Court expanded the waiver of immunity exemption to the FTCA and held that "the Government is not liable . . . for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id*. at 146.

There were three rationales underlying *Feres*: (1) the distinctly federal nature of the relationship between the Government and members of its armed forces; (2) "the existence of [ ] generous statutory disability and death benefits"; and (3) the judiciary's unwillingness to involve itself "in sensitive military affairs at the expense of military

---

[1] The *Feres* Doctrine follows the Supreme Court's interpretation of the FTCA in *Feres v. United States*, 340 U.S. 135 (1950).

discipline and effectiveness." *United States v. Johnson*, 481 U.S. 681, 688-89 (1987); *United States v. Shearer*, 473 U.S. 52, 59 (1985).

The Supreme Court has reasoned that suits "based upon service-related activity…could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word." *Johnson*, 481 U.S. at 691. In general, the Supreme Court has adhered to this principle by

> "broadening the *Feres* doctrine to encompass…all injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat purpose of the military activity from which it arose."

*Major v. United States*, 835 F.2d 641, 644-45 (6th Cir. 1987).

That said, "[t]he *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases." *Shearer*, 473 U.S. at 57.

The question is whether Pvt. Siddiqui's injuries arose out of, or were sustained in the course of, activity incident to service. The answer, according to binding precedent, is yes, even though Pvt. Siddiqui was not yet a Marine. The Sixth Circuit has held that *Feres* barred the FTCA claims of a member of the Army Reserve Officers' Training Corps ("ROTC"), who was enlisted, but not yet on active duty. *See Lovely v. United States*, 570 F.3d 778 (6th Cir. 2009). At the time of his death, Pvt. Siddiqui was both enlisted and, as a recruit on a "full-time training duty," on active duty according

to 10 U.S.C. § 101(d)(1). Significantly, in *Satterfield v. United States*, 788 F.2d 395 (6th Cir. 1986), the Sixth Circuit held that *Feres* barred the FTCA suit of a plaintiff who had not yet completed basic training and who was off-duty and off-base at the time of his death.

Plaintiffs cannot escape the reach of the *Feres* doctrine by alleging torts that began during recruitment and while Pvt. Siddiqui was still a DEP poolee. *Satterfield* held that when a soldier's death is "incident to military service," "the *Feres* doctrine was properly applied to bar plaintiff's claim of negligent enlistment as well." *Satterfield*, 788 F.2d at 399-400. Plaintiffs' negligent enlistment claim cannot provide a jurisdictional hook for the FTCA, because the injury for which the Siddiqui family seeks relief was suffered incident to Pvt. Siddiqui's military service.

## CONCLUSION

The Siddiqui family has indicated that a purpose of the lawsuit was to clarify that their son did not commit suicide. They also wanted to persuade the Marine Corps to deter the harassment of Muslim recruits that played a part in their son's death. It is clear from the actions the Marine Corps took against Sgt. Felix and Lt. Col. Kissoon that they recognize the severity of the problem and are acting to combat religious discrimination at Parris Island.

The Court cannot let the family move forward with their suit. The *Feres* Doctrine, a judicially-engineered exception to the FTCA's waiver of the U.S. Government's sovereign immunity, bars the suit. That doctrine has long been heavily

criticized. In a scathing dissent, Justice Scalia wrote that "*Feres* was wrongly decided and heartily deserves the 'widespread, almost universal criticism it has received.'" *Johnson*, 481 U.S. at 700 (Scalia, J., dissenting) (quoting *In re "Agent Orange" Product Liability Litigation*, 580 F.Supp. 1242, 1246 (E.D.N.Y. 1984)). He described *Feres* as a "clearly wrong decision." *Id.* at 703.

Since *Feres*, soldiers suffering even the most brutal injuries due to military negligence have been shut out of the courts. *See* Major Deidre G. Brou, *Alternatives to the Judicially Promulgated Feres Doctrine*, 192 Mil. L. Rev. 1 (2007).

Lower courts have also recognized that "[t]he viability and applicability of the *Feres* doctrine's various rationales is in doubt." *Snow v. USMC*, 2011 WL 1599231, at *4 (E.D. Tex. 2011) (citing *Taber v. Maine*, 67 F.3d 1029, 1038-44 (2d Cir. 1995); *Parker v. United States*, 611 F.2d 1007 (5th Cir. 1980); *see also Daniel v. United* States, 889 F.3d 978, 982 (9th Cir. 2018) (dismissing a medical malpractice case brought by the family of a Lieutenant who bled to death during childbirth in a naval hospital while noting, "[i]f ever there were a case to carve out an exception to the *Feres* doctrine, this is it."). Dismissing an action brought by the widow of a serviceman who was killed in a botched appendectomy at a military hospital, one district court characterized the doctrine as "unfair and irrational," and observed that the plaintiff was "limited to a fraction of the recovery she might have otherwise received." *Witt v. United States*, 2009 U.S. Dist. LEXIS 9451 at *6-7 (E.D. Cal. 2009).

Indeed, the *Feres* doctrine's reliance on "generous" military no-fault compensation has not withstood the test of time. A $100,000 death benefit and $400,000 in a group life insurance payout are mere fractions of most wrongful death awards. The September 11th Fund's wrongful death awards were in the $2-$3 million-dollar range. Eric Posner & Cass Sunstein. Dollars and Death, 72 U CHI. L. REV. 537 (2005). Those awards considered modern tort principles, including the focus on deterrence and compensation. Id. Pvt. Siddiqui's death benefit is woefully out-of-step with such principles.

Nevertheless, and despite strong reservations, the Court remains bound by *Feres* and its progeny.

Accordingly,

**IT IS ORDERED** that the Defendant's June 29, 2018 Motion to Dismiss [14] is **GRANTED**.

**SO ORDERED**.

                                          s/Arthur J. Tarnow
                                          Arthur J. Tarnow
Dated: November 27, 2018        Senior United States District Judge